UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

SCOTT PACE,

Plaintiff,

v.

BRIAN WILLIAMS, et al.,

Defendants.

Case No. 3:25-cv-00335-ART-CSD

SCREENING ORDER

Plaintiff, who is currently in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a first amended civil rights complaint ("FAC") pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis.* (ECF Nos. 5, 1.) The Court accepts the FAC as the operative complaint in this case. The matter of the filing fee will be temporarily deferred. The Court will now screen the FAC under 28 U.S.C. § 1915A.

## I.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988).

1

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings

[allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF FAC

In the FAC, Plaintiff sues Defendants James Dzurenda, Brian Williams, Kenneth Williams, Nethanjah Breitenbach, Erin Parks, Kara Legrand, Upgrove, and Dana Marks, as well as four John Doe Defendants, for events that took place during his incarceration at Lovelock Correctional Center ("LCC"). (ECF No. 4 at 1-1, 10.) Plaintiff brings four counts and seeks monetary and injunctive relief. (*Id.* at 3-7.) The FAC is made up of a very lengthy nature of the case section, followed by shorter sections for each individual count. (*Id.* at 1-35.) The Court will follow Plaintiff's organizational structure and first summarize the allegations in the nature of the case section of the FAC before considering additional relevant allegations in each individual count in turn.

Plaintiff states that during the alleged events he was incarcerated at LCC, a medium security prison that houses the majority of sex offenders who need to be separated from the general population. (*Id.* at 12.) All of the Defendants had actual or constructive notice that Plaintiff identifies as "LBGQT." (*Id.*)

At some point an inmate named Rex Taylor Fairbanks was transferred to LCC. (*Id.* at 13.) Plaintiff believes that Fairbanks was an active member of a gang known to prey on sex offenders. (*Id.*) If members of the gang fail to attack a sex offender when presented the opportunity, then the gang member himself becomes a target for attack from the other members of the gang. (*Id.*)

John Doe I admitted to having general knowledge of Fairbanks's past. (*Id.*) John Does II-IV also knew about his past. (*Id.* at 14.) On November 10, 2024, Fairbanks was placed in Plaintiff's cell. (*Id.*) Plaintiff raised concerns about Fairbanks as best he could, but Fairbanks was observing him. (*Id.*) Later that day, Fairbanks sexually and physically assaulted Plaintiff. (*Id.* at 15.) The abuse was violent and extensive. (*Id.*) Fairbanks told Plaintiff that if he reported the incident his family would be killed. (*Id.*)

Despite the threat, Plaintiff filed a Prison Rape Elimination Act report about Fairbanks and sent copies to Parks, Upgrove, and security staff at LCC. (*Id.*) Plaintiff was generally ignored, but he was brought to medical for a limited physical examination, and the matter was referred to the inspector general's office. (*Id.*) The Defendants all had knowledge of the incident. (*Id.* at 16.)

The following day, Plaintiff requested additional evaluation for rape, medical care for the physical abuse, and mental health trauma intervention. (*Id.*) Nurse Upgrove gave Plaintiff an initial evaluation and promised that there would be further evaluation for his anxiety in the future, but further evaluation or treatment was never provided. (*Id.*) Plaintiff also received minimal initial medical care for his physical injuries, but Dr. Marks refused to see Plaintiff or evaluate his injuries further. (*Id.*)

Fairbanks was separated from Plaintiff, but he was not charged with the incident either criminally or through NDOC internal disciplinary mechanisms. (*Id.* at 17.) While in administrative segregation, Fairbanks was able to convey further threats against Plaintiff. (*Id.*) Plaintiff later learned that Fairbanks was released, and he has since then been worried that Fairbanks would follow through on his threats to hurt Plaintiff's family. (*Id.*) Plaintiff believes that criminal charges will not be pursued against Fairbanks because the Defendants failed to properly evaluate and preserve evidence of the incident. (*Id.*)

**A.    Count I**

In Count I, Plaintiff alleges further alleges that Defendants Dzurenda, Brian Williams, Breitenbach, Legrand, and John Does I-IV all had knowledge of Fairbanks's violent nature and gang affiliation before he was transferred to LCC. (ECF No. 5 at 3.) They also knew that as a gang member Fairbanks was required to attack any sex offenders that he came into contact with. (*Id.* at 20.) Before Fairbanks was assigned a placement at LCC, he met with LeGrand, the classification officer at LCC. (*Id.* at 3.) Fairbanks told LeGrand that he would not live with a sex offender, but LeGrand replied that he would not have much choice at LCC. (*Id.*)

Based on these allegations, Plaintiff brings a threat to safety claim under the Eighth Amendment, the Fourteenth Amendment, and the "Nevada constitutional equivalents." (*Id.* at 3.) Plaintiff's right to be free from violence at the hands of other inmates is grounded in the Eighth Amendment's prohibition on cruel and unusual punishment, not the Fourteenth Amendment. Therefore, the Court dismisses Plaintiff's threat to safety claim under the Fourteenth Amendment with prejudice, as amendment would be futile.

As for Plaintiff's claims under the Nevada Constitution, the Court lacks jurisdiction to consider these claims. "The Eleventh Amendment grants a Statef immunity from suit in federal court . . . by its own citizens . . . ." *Walden*

*v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019). "A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011) (citation omitted). "But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 254.

Under Nevada Revised Statute § 41.0337, "[n]o tort action arising out of an act or omission within the scope of a person's public duties or employment may be brought against any present or former" NDOC officer or employee "unless the State or appropriate political subdivision is named a party defendant under NRS § 41.031." Nev. Rev. Stat. § 41.0337(1). In other words, for certain tort actions, the State of Nevada has conditioned its waiver of sovereign immunity on being named a party defendant." *See id.* Thus, to sue NDOC officers under state law in this action, Plaintiff is required under § 41.0337 to name the State of Nevada as a defendant. *See id.* But he cannot do so in federal court because the State of Nevada has not waived its Eleventh Amendment immunity from suit in federal court, and Congress has not abrogated state sovereign immunity for actions brought under 42 U.S.C. § 1983. *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) ("Nevada has explicitly refused to waive its immunity to suit under the eleventh amendment. The Supreme Court has made it clear that section 1983 does not constitute an abrogation of the eleventh amendment immunity of the states." (internal citations omitted)).

Thus, the Court lacks jurisdiction over all of Plaintiff's state law claims and dismisses all his state law claims without prejudice. *See Hirst v. Gertzen*, 676 F.2d 1252, 1264 (9th Cir. 1982) (holding that, where Montana law deemed governmental entities indispensable parties in a state tort claim against a county employee, the federal court had no supplemental jurisdiction over the state tort claim if it had no jurisdiction over the indispensable party). The Court will not further address Plaintiff's state law claims in other counts.

The Court now considers Plaintiff's threat to safety claim under the Eighth Amendment. Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011). "Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable

action or inaction of his or her subordinates." *Id.* at 1207. As such, "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Id.*

### 1. Defendant LeGrand

The Court finds that Plaintiff states a colorable threat to safety claim against Defendant LeGrand. The Court liberally construes the FAC as alleging that LeGrand knew that Fairbanks was a dangerous inmate who was an active member of a gang. As a gang member, he was duty bound to attack any other inmates convicted of sexual assault, and if he failed to do so, he himself could become a target. Fairbanks specifically told LeGrand that he would not live in the same cell as a sex offender. These allegations are sufficient to support an inference that LeGrand knew that placing Fairbanks in Plaintiff's cell put Plaintiff at excessive risk of serious harm, but she disregarded that risk and made the decision to put Fairbanks in Plaintiff's cell anyway. This is sufficient to state a colorable claim against LeGrand at this preliminary screening stage.

### 2. Other Defendants

The Court finds that Plaintiff fails to state a colorable claim against any other Defendants. Plaintiff tries to bring claims against multiple supervisory Defendants, as well as multiple John Doe Defendants. Plaintiff's claims against the supervisory Defendants (Dzurenda, Brian Williams, and Breitenbach) do not include sufficient detail to support that they were even aware of Fairbanks, much less that they knew that he posed a danger to Plaintiff and failed to intervene to protect Plaintiff.

Plaintiff alleges in conclusory fashion that all the Defendants knew about Fairbanks's violent character and gang affiliation, but he does not allege any specific facts to support this conclusory allegation. Furthermore, even if they knew that there was a dangerous inmate named Fairbanks, the FAC does not

include any specific allegations to support that any of these Defendants knew that Fairbanks would be placed in Plaintiff's unit or were in any way involved in Fairbanks placement. There are many dangerous inmates in NDOC custody. The question is not whether the Defendants knew that there was a dangerous inmate being housed at LCC, but whether they knew of a serious threat to Plaintiff's safety, had the ability to act to prevent the threat, but instead acted with deliberate indifference to the threat. Plaintiff generally asserts that the Defendants failed in their roles as supervisors, but he does not allege any specific facts to support supervisory liability. Accordingly, the Court dismisses these Defendants from Count I without prejudice.

Plaintiff also alleges that John Doe I admitted to having general knowledge of Fairbanks's past and that John Does II-IV also had knowledge of Fairbanks's past. But the FAC does not include any information about who these Defendants were or what role, if any, they played in placing Fairbanks in Plaintiff's cell. Again, the allegations do not support that John Does I-IV were aware of serious threat to Plaintiff's safety, had the ability to act to prevent the threat, but instead acted with deliberate indifference to the threat. Therefore, the allegations in the FAC do not support this claim against Defendants John Doe I-IV, and the Court dismisses them from Count I without prejudice.

**B.    Count II**

In Count II, Plaintiff alleges that Defendants Dzurenda, Williams, Breitenbach, LeGrand, Parks, Upgrove, Marks, an Does I-IV were all aware of Fairbanks's assault on Plaintiff. (ECF No. 5 at 4.) Some of those Defendants were involved in evaluating Plaintiff after the assault. (*Id.*) The Defendants had a duty to preserve evidence of the rape and assault. (*Id.* at 23.) They also had a duty to provide Plaintiff psychological care, to diagnose and treat Plaintiff's injuries, and to test Plaintiff for sexually transmitted diseases. (*Id.*)

Dzurenda, as Director of NDOC, had actual knowledge that Plaintiff did

not receive a proper diagnosis or treatment. (*Id.* at 24.) Williams, as the medical Director, was Dzurenda's agent and had the same knowledge. (*Id.*) Breitenbach, the warden, was also Dzurenda's agent, and he also had actual knowledge that Plaintiff was not receiving proper medical care. (*Id.*) LeGrand was responsible for the medical clinic at LCC and was in charge of mental health and preservation of evidence of crimes. (*Id.* at 25.) Parks was the director of nursing and directly responsible for all medical and mental health activities at LCC. (*Id.*) Dr. Marks was Plaintiff's attending physician and aware of the harm that Plaintiff had suffered, but he refused to diagnose or treat Plaintiff. (*Id.* at 26.) Defendant Upgrove promised Plaintiff that he would receive further treatment, but he never received that treatment. (*Id.*) All these Defendants, as well as John Does I-IV, were deliberately indifferent to Plaintiff. (*Id.*)

In addition to his injuries from the initial incident, Plaintiff suffers from anxiety as a result of Fairbanks never being held responsible for the assault. (*Id.* at 27.) Plaintiff asserts that his anxiety is a serious medical condition caused by the failure to preserve the evidence of Fairbanks's crime, which was needed to prosecute Fairbanks. (*Id.*)

Based on these allegations, Plaintiff brings claims under the Eighth and Fourteenth Amendments regarding his medical care. (*Id.* at 4.) Plaintiff's right to medical care is grounded in the Eighth Amendment, not the Fourteenth Amendment. The Court dismisses Plaintiff's Fourteenth Amendment claim regarding his medical care with prejudice, as amendment would be futile. The Court will now consider Plaintiff's claims under the Eighth Amendment.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511

U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

### 1. Mental Health

#### i. Defendants Upgrove and Dr. Marks

The Court finds that Plaintiff states a colorable claim of deliberate indifference to his serious mental health needs against Defendants Upgrove and Dr. Marks. The Court liberally construes the FAC as alleging that after he was sexually assaulted, Plaintiff requested mental health treatment. He met with Nurse Upgrove and explained to her that he was feeling extreme anxiety and needed further mental health treatment. Upgrove told him that he would receive further treatment, but she never took the necessary steps to ensure that he actually received that treatment. Dr. Marks was assigned as Plaintiff's treating

physician. But Dr. Marks refused to even see Plaintiff, much less diagnose and treat his mental health needs. These allegations are sufficient to state a colorable claim of deliberate indifference to Plaintiff's serious mental health needs at this preliminary screening stage. This claim will proceed against Defendants Upgrove and Dr. Marks.

### ii.   Other Defendants

The Court finds that Plaintiff fails to state a colorable claim against any other Defendants. As in Count I, Plaintiff states in conclusory fashion that all of the other Defendants were aware of the incident. But the FAC does not include any specific allegations detailing how or when any of the other Defendants learned of the incident. More importantly, the FAC does not allege that any of the other Defendants were involved in Plaintiff's medical care. Even if the Court were to accept Plaintiff's conclusory allegations that Dzurenda, for example, was aware of Fairbanks's assault against Plaintiff, it does not follow that Dzurenda was aware both that Plaintiff had a serious medical need, and that Plaintiff's medical need was going untreated. Because the FAC does not support that any other Defendant was aware of, much less involved with, Plaintiff's medical care, it does not support a colorable claim of deliberate indifference to a serious medical need against any other Defendant, and the Court dismisses the remaining Defendants from this claim without prejudice.

### 2. Physical Health

To the extent that Plaintiff is attempting to bring a claim of deliberate indifference to a serious medical need based on his physical injuries, he fails to state a colorable claim. Plaintiff never states what physical injuries he suffered, what treatment he needed, or what further harm he suffered due to any failure to treat his physical injuries. As such, the allegations do not support a claim of deliberate indifference to a serious medical need based on his physical injuries, and the Court dismisses this claim without prejudice.

### 3. Preservation of Evidence

Plaintiff also appears to bring a claim based on the alleged failure to preserve evidence of Fairbanks's assault. However, the failure to preserve evidence is not a failure to provide medical treatment. Plaintiff attempts to link the two by alleging that the failure to preserve evidence, and the resulting failure to prosecute Fairbanks, caused him to suffer anxiety and that his anxiety is a serious medical issue. But Plaintiff's right to medical care is not a right to avoid anxiety in the first place, rather it is a right to treatment for his anxiety (assuming his anxiety constitutes a serious medical need).

Plaintiff does not have an Eighth Amendment right to have evidence of a crime preserved. Nor for that matter does he have an Eighth Amendment right to have Fairbanks prosecuted or punished in some other manner. Rather he has a right to treatment for his serious medical issues, including serious mental health issues.

To the extent that Plaintiff was trying to bring a Fourteenth Amendment due process claim based on the failure to preserve evidence and prosecute Fairbanks, the Court notes that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, (2005); *see also Gini v. Las Vegas Metropolitan Police Dept.,* 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police have no affirmative obligation to investigate a crime in a particular way."); *Boldt v. Myers*, 376 F. App'x 800, 801 (9th Cir. 2010) (affirming dismissal of § 1983 action alleging that defendant law enforcement officials failed to investigate plaintiff's allegations of elder abuse). Accordingly, Plaintiff does not have a Fourteenth Amendment due process right to have prison officials preserve evidence or have police or prosecutors either investigate or prosecute Fairbanks. Accordingly, the Court dismisses any Fourteenth Amendment claim on this basis with prejudice as amendment would be futile.

### C.    Count III

In Count III, Plaintiff alleges that all the Defendants discriminated against him as a member of the "LBGQT" community. (ECF No. 5 at 5.) Plaintiff suffers from chronic depression and anxiety. (*Id.*) Like many members of the LBGQT community he struggles with suicidal thoughts. (*Id.*) The Defendants collectively and individually had knowledge or reason to know of Plaintiff's mental health status. (*Id.*) The Defendants collectively and individually treated Plaintiff unequally as compared with other inmates because of his sexual orientation. (*Id.* at 30.)

Plaintiff was deliberately housed with a violent inmate who hated sex offenders and members of the LBGQT community. (*Id.*) The Defendants allowed Fairbanks to attack Plaintiff because of Plaintiff's membership in the LBGQT community. (*Id.*) Fairbanks was put in Plaintiff's cell for the express purpose of allowing Fairbanks to harm Plaintiff in order to demonstrate the Defendants' disapproval of Plaintiff's sexual orientation. (*Id.*)

The Defendants did not preserve evidence of the crime because "it was assumed that Plaintiff 'wanted' the sexual contact." (*Id.* at 31.) The lack of medical care and the failure to report the crime to count authorities further demonstrate discrimination. (*Id.*) The fact that the Defendants and their agents have denied wrongdoing and allowed Fairbanks to stay at LCC after the incident also demonstrates discrimination. (*Id.*)

Based on these allegations, Plaintiff brings an equal protection claim under the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected

class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The Court finds that Plaintiff fails to state a colorable equal protection claim. Plaintiff states in conclusory fashion that he was treated differently than other inmates and that the unequal treatment was the result of deliberate discrimination. But he does not allege any specific facts to support either conclusion. He does not allege any facts to support that other inmates received better treatment than he did. For example, Plaintiff alleges that he did not receive proper medical care and that NDOC officials refused to admit their wrongdoing against him. But Plaintiff does not allege any facts to support that inmates who were not part of the LBGQT community received appropriate healthcare or that NDOC officials admitted their wrongdoing against non-LBGQT inmates.

Similarly, Plaintiff states in conclusory fashion that the "Defendants" deliberately place Fairbanks in his cell with the intent to have him injured in order to express the "Defendants'" disapproval of his sexual orientation. But Plaintiff provides no basis for this conclusion. He does not identify any Defendant responsible for placing Fairbanks in his cell or provide any basis to support that any Defendant acted out of malice toward him based on his sexual orientation. In other sections of the FAC Plaintiff alleges the LeGrand was the placement officer who interviewed Fairbanks and then placed him in Plaintiff's cell. But Plaintiff does not allege any facts to support that LeGrand acted with an intent to discriminate against Plaintiff because of his sexual orientation.

Because the complaint does not include any factual allegations to support that any Defendant acted with the intent and purpose to discriminate against Plaintiff based on his sexual orientation, the FAC fails to state a colorable equal protection claim, and the Court dismisses this claim without prejudice.

15

**D.    Count IV**

In Count IV, Plaintiff brings a claim of intentional infliction of emotional distress. (ECF No. 5 at 6.) This is a state law tort claim. For the reasons discussed *supra* Section II(A), Plaintiff cannot bring state law tort claims against state officials in this case, and the Court dismisses this claim in its entirety without prejudice.

**III.    CONCLUSION**

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Court accepts the FAC (ECF No. 5) as the operative complaint in this case. The Clerk of the Court is directed to send Plaintiff a courtesy copy of the FAC.

It is further ordered that Plaintiff's failure to protect claim under the Eighth Amendment will proceed against Defendant Kara LeGrand. All other defendants are dismissed from this claim without prejudice.

It is further ordered that Plaintiff's failure to protect claim under the Fourteenth Amendment is dismissed with prejudice, as amendment would be futile.

It is further ordered that Plaintiff's claim of deliberate indifference to a serious medical need based on the failure to treat his serious mental health issues will proceed against Defendants Upgrove and Dr. Marks. All other defendants are dismissed from this claim without prejudice.

It is further ordered that Plaintiff's claim of deliberate indifference to a serious medical need based on the failure to treat his physical injuries is dismissed without prejudice.

It is further ordered that Plaintiff's claim of deliberate indifference to a serious medical need based on the failure to preserve evidence of the assault against him is dismissed with prejudice, as amendment would be futile.

16

It is further ordered that Plaintiff's medical care claim under the Fourteenth Amendment is dismissed with prejudice, as amendment would be futile.

It is further ordered that any Fourteenth Amendment due process claim based on the failure to preserve evidence of the crime or charge Fairbanks for his crime is dismissed with prejudice, as amendment would be futile.

It is further ordered that Plaintiff's Fourteenth Amendment equal protection claim is dismissed without prejudice.

It is further ordered that Plaintiff's various state law claims are all dismissed without prejudice because the Court does not have jurisdiction over these claims.

It is further ordered that Defendants James Dzurenda, Brian Williams, Kenneth Williams, Nethanjah Breitenbach, Erin Parks, and John Does I-IV are dismissed from the entirety of the case without prejudice.

It is further ordered that given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow the parties an opportunity to settle their dispute before the Court determines whether to grant Plaintiff's *in forma pauperis* application, the $350 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order about that matter. If the Court has not entered an order setting an Inmate Early Mediation Conference within 90 days of this order, the Office of the Attorney General will file a notice informing the Court that this case is awaiting a mediation date. If the case does not settle at mediation, the Court will issue an order setting a date for

Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

"Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, then the Court will determine whether to grant Plaintiff's *in forma pauperis* application. Plaintiff will be required to pay the full $350 statutory filing fee for a civil action regardless of whether the Court grants his *in forma pauperis* application. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting the application. If Plaintiff is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $55 administrative filing fee, for a total of $405, will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party will file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have 7 days to file a response. No reply will be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Plaintiff needs an interpreter to participate in the mediation program, Plaintiff will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

It is further ordered that the Clerk of Court is further directed to add the

Nevada Department of Corrections to the docket as an Interested Party and electronically provide a copy of this order and copies of all items previously filed in this case by regenerating the Notices of Electronic Filing on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of this order whether it will enter a limited notice of appearance on behalf of Interested Party for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

DATED THIS 26th day of June 2026.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE